

**NUMBER 13-07-061-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ELIZABETH SMITH,**                                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                **Appellee.**

**On appeal from the 130th District Court of Matagorda County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Justice Yañez**

A jury found Elizabeth Smith guilty of capital murder.[1]  On appeal, Elizabeth argues

that the evidence of her guilt was legally and factually insufficient.  Having found sufficient

evidence to convict Elizabeth of capital murder under the law of parties, we affirm the trial

---

[1] Tex. Penal Code Ann. § 19.03 (Vernon Supp. 2008).

court's judgment.

## I. THE TRIAL EVIDENCE[2]

Elizabeth was married to Justin Smith at the time of the offense. The two lived together in Matagorda County, as did Justin's parents, Thomas and Toni Smith. Justin and Elizabeth did not have a good relationship with Thomas and Toni. Justin's relationship with his parents was particularly troubled. On December 9, 2004, Thomas informed a friend, Richard Hahn, of a confrontation he had recently had with Justin. Thomas told Hahn that Justin had stolen property from him and that he had given Justin an ultimatum: Justin had to return the stolen property by Monday, December 13, or else Thomas would inform the authorities of the theft. This ultimatum was highly disconcerting to Justin, who had served time in prison and was currently on parole.

In the evening of December 11, Justin and Ellizabeth were driving around town with Justin's friend and distant cousin, Craig Sabrsula. Justin told Sabrsula that he was in trouble with his parents for stealing their guns, but that he had a solution for his troubles. Sabrsula asked Justin to state the solution. According to Sabrsula, Justin remained quiet, but Elizabeth responded by "laughing hysterically" and stating, "You're not going to like what he has planned. You're not going to like what we have to do[.]" Justin then told Sabrsula that he was going to kill his parents. Justin asked Sabrsula for his assistance in committing the murder, but Sabrsula refused.

In the evening of December 12, Justin and Elizabeth dropped off their infant daughter, Shelbie, at the home of a friend, Heather Green. Prior to arriving at Green's

---

[2] The following information is drawn from trial testimony presented through the State's witnesses.

home, Justin phoned Green and notified her that he and Elizabeth would be leaving Shelbie with her for the night. Justin told Green that "he had business to take care of with his dad[.]"

On Monday, December 13, Justin met with Sabrsula after Sabrsula got out of work. Justin was driving a Suburban owned by his parents. Sabrsula joined Justin in the Suburban, and Justin then told Sabrsula that he killed his parents, Thomas and Toni. Justin told Sabrsula that, on the night of the murder, Elizabeth drove him to his parents' residence and dropped him off. Justin further told Sabrsula that he had a gun with him when Elizabeth left him at his parents' residence, and that he used the gun to murder his parents.

Justin drove Sabrsula to a storage building. Sabrsula assisted Justin in unloading items from the Suburban and placing them into a storage room. Elizabeth met Justin and Sabrsula at the storage building. The next day, Justin drove Sabrsula in the Suburban to Thomas and Toni's residence. Justin and Sabrsula entered the trailer, where Sabrsula saw Thomas's and Toni's dead bodies wrapped in clear plastic tarps. In the days to follow, Justin would continue to drive Sabrsula to the trailer. Justin would enter the trailer, but Sabrsula would not. On some of these occasions, Sabrsula saw Elizabeth enter the trailer.

On December 20, Texas Ranger David Maxwell contacted Justin and Elizabeth in response to reported concern regarding the whereabouts of Thomas and Toni. Maxwell conducted an interview with Elizabeth that day. When asked where Thomas and Toni were, Elizabeth told Maxwell that, to her knowledge, they were on a three or four-week vacation, during which time they were looking for racehorses to purchase. Elizabeth also told Maxwell that Thomas and Toni did not like her, and that Justin's life was better with his

3

parents out of town. When Elizabeth was asked about the last time she saw Thomas and Toni, Elizabeth gave Maxwell vague answers. Elizabeth was unable to tell Maxwell when she last saw Thomas and Toni, where they might be, or when she last talked to them. Maxwell also interviewed Justin later that day.

When Elizabeth went to the police department to speak with Maxwell, Green accompanied her. According to Green, Elizabeth appeared calm before the interview, but appeared nervous afterwards. Green and Elizabeth were driving together after the interview when Elizabeth told Green that she had to tell her something. Elizabeth became emotional and told Green that Justin had killed his parents while Green was babysitting Shelbie on the night of December 12. Elizabeth told Green that when Justin called her about babysitting Shelbie, and told her about needing to take care of some "business," Justin was referring to killing his parents. Elizabeth further told Green that after Shelbie was left in Green's care, she drove Justin to his parents' residence and left him there; Justin later called Elizabeth and told her that he had shot and killed his parents. As Elizabeth was relating these events to Green, Elizabeth quickly ceased being emotional and soon appeared calm and normal to Green.

Green and Elizabeth then drove to Elizabeth and Justin's rented home, which Green had recently agreed to clean for money. Green began cleaning the home and finished with the work later that day. After Green cleaned the home and was preparing to leave, Green observed Elizabeth place a duffel bag containing a large amount of jewelry into a box. Elizabeth asked Green what she had done with gun shell casings that had been on an end table in the living room. Green told Elizabeth that she had placed the shell casings in the master bedroom while cleaning. Elizabeth then retrieved the shell casings from the

4

bedroom and asked Green where the casings could be hidden. At some point, Elizabeth placed the box containing the duffel bag in Green's vehicle; Elizabeth asked Green to hold onto the box until the following day, at which time Elizabeth and Justin would come to retrieve it. Green did not see what Elizabeth did with the shell casings. The following day, on December 21, law enforcement forced their way into Thomas and Toni's residence, resulting in the discovery of their bodies. Green became aware of this discovery the same day. Green then opened the box that Elizabeth had given her and discovered the shell casings inside. The shell casings would later be tied to the murders of Thomas and Toni.

Justin and Elizabeth fled Matagorda County around the time Thomas's and Toni's bodies were discovered. A warrant was issued for Justin's arrest. On January 8, 2004, Justin and Elizabeth were apprehended in Ruidoso, New Mexico. Authorities had been preparing an arrest warrant for Elizabeth prior to her apprehension. Once apprehended, Elizabeth gave a statement to police implicating Justin in his parents' murder. Elizabeth denied knowing of Justin's intent to murder Thomas and Toni, and her statement appeared to dispute the contention that she had dropped Justin off at his parents' residence the night of their murder.

## II. APPLICABLE LAW

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both."[3] A person is criminally responsible for an offense committed by the conduct of another if, "acting with intent to promote or assist the commission of the

---

[3]TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2003).

5

offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."[4]

Under the law of parties, the State is able to enlarge a defendant's criminal responsibility to acts in which he may not be the primary actor. When an accused promotes or assists in the commission of an offense, he also shares the criminal responsibility. If the State is to prove the accused's guilt as a party, it must first prove the guilt of another person as the primary actor. In order to establish liability as a party, it must be shown that, in addition to the illegal conduct by the primary actor, the accused harbored the specific intent to promote or assist the commission of the offense. The accused must know that he was assisting in the offense's commission. The agreement, if any, must be before or contemporaneous with the criminal event. The evidence must show that at the time of the commission of the offense, the parties were acting together, each doing some part of the execution of the common design.

While an agreement of the parties to act together in a common design seldom can be proved by direct evidence, reliance may be had on the actions of the parties, showing by either direct or circumstantial evidence, an understanding and common design to do a certain act.

The State must show more than mere presence to establish participation in a criminal offense. Mere presence or even knowledge of an offense does not make one a party to the offense. Nevertheless, mere presence is a circumstance tending to prove that a person is a party to the offense, and when taken with other facts, may be sufficient to show that he was a participant. In determining whether an accused participated in the offense as a party, the fact finder may examine the events occurring before, during, and after the commission of the offense.[5]

### III. LEGAL SUFFICIENCY

In addressing a legal sufficiency challenge, we review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that

---

[4] *Id.* § 7.02(a)(2) (Vernon 2003).

[5] *Barnes v. State*, 62 S.W.3d 288, 295-97 (Tex. App.–Austin 2001, pet. ref'd) (citations omitted).

6

supports the verdict.[6] It is not necessary that every fact point directly and independently to the defendant's guilt, but it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances.[7] We must consider all the evidence, rightly or wrongly admitted, that the trier of fact was permitted to consider.[8]

In the instant case, the jury charge permitted the jury to assess Elizabeth's guilt as follows:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 13th day of December, 2004, in Matagorda County, Texas, JUSTIN SMITH did intentionally or knowingly cause the death of an individual, THOMAS SMITH, by shooting him with a firearm and TONI SMITH by shooting her with a firearm or stabbing her with a knife, and that the defendant ELIZABETH SMITH, then and there knew of the intent, if any, of said JUSTIN SMITH to shoot and kill the said THOMAS SMITH and to shoot or stab and kill the said TONI SMITH and the defendant acted with intent to promote or assist the commission of the offense by JUSTIN SMITH to shot [sic] or stab and kill the said THOMAS SMITH and TONI SMITH by encouraging, directing, aiding or attempting to aid JUSTIN SMITH to commit the offense of causing the death of THOMAS SMITH and TONI SMITH, you will find the defendant, ELIZABETH SMITH, guilty of capital murder as charged in the indictment.

On appeal, Elizabeth does not challenge the sufficiency of the evidence establishing that Justin caused the deaths of his parents as stated in the jury charge. The only question Elizabeth poses to this Court is whether there was sufficient evidence that she acted with the intent to promote or assist Justin in murdering his parents.

Based on the testimony of Sabrsula and Green, the jury heard evidence that Elizabeth had dropped off Justin at his parents' residence on December 12, the night of

---

[6] *See Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007).

[7] *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

[8] *See Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).

7

their murder. The trial evidence permitted the jury to conclude that Justin was at the residence for a prolonged period of time. By not having his Ford Explorer parked outside his parents' residence, Justin was able to significantly reduce the chance that a neighbor or passerby would connect his presence to the scene of the crime on the night in question. Furthermore, as a result of Elizabeth dropping him off, Justin was able to leave the crime scene in his parents' Suburban—which the trial evidence indicated was the vehicle Justin preferred to drive—without leaving behind evidence of his presence (i.e., his Explorer). It is thus clear that Elizabeth's act of driving and leaving Justin at his parents' residence assisted his commitment of the charged offense. The only remaining matter left to address is whether Elizabeth had the *intent* to assist Justin in his criminal undertaking.

Sabrsula testified that Justin discussed his plan to murder his parents in front of Elizabeth, who exhibited neither surprise nor disapproval during this discussion. Sabrsula and Green both revealed statements Elizabeth made that suggested she had knowledge of Justin's intent to murder his parents. Hahn's testimony established that (1) Justin was on bad terms with his parents during the days preceding the murders, and (2) Justin was aware of his parents' intent to report his thefts to the authorities on December 13. Sabrsula's testimony revealed that Elizabeth was aware of this conflict between Justin and his parents. Inside the parents' residence, law enforcement uncovered Elizabeth's fingerprint on a cellophane wrapper, which was packaging material for the type of plastic tarp found covering Thomas's and Toni's bodies.[9]

Elizabeth's behavior after the murders created an inference that she assisted in the

---

[9] *See generally Clayton v. State*, 235 S.W.3d 772, 779 (Tex. Crim. App. 2007) (recognizing that prints can provide an additional, incremental piece of circumstantial evidence of one's guilt).

commission of the offense. This behavior consisted of the following: (1) wearing Toni's jewelry immediately after the murders; (2) telling varying stories regarding how the jewelry came into her possession; (3) telling conflicting stories regarding the whereabouts of Thomas and Toni; (4) entering Thomas and Toni's residence, which, as testified to by Sabrsula and Maxwell, contained Thomas's and Toni's readily visible bodies upon entry; (5) selling or attempting to sell jewelry belonging to Thomas and Toni at various pawn shops; (6) lying to law enforcement during an interview with Maxwell;[10] (7) hiding evidence related to the murders;[11] (8) leaving town in Thomas and Toni's Suburban at the time their bodies were discovered;[12] (9) evading the detection of authorities; and (10) showing utter indifference to Thomas's and Toni's murders when apprehended by law enforcement.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt all the essential elements of capital murder and Elizabeth's guilt as a party to the offense. Elizabeth's legal sufficiency challenge is overruled.

## IV. FACTUAL SUFFICIENCY

When reviewing the factual sufficiency of the evidence to support a conviction, we review all the evidence in a neutral light, favoring neither party.[13] We then ask (1) whether

---

[10] *See generally Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (finding that inconsistent statements and false statements to authorities are probative of wrongful conduct and are also circumstantial evidence of guilt).

[11] *See generally id.* (finding that one's attempt to conceal incriminating evidence is probative of wrongful conduct and is also circumstantial of guilt).

[12] *See generally Clayton*, 235 S.W.3d at 780 (recognizing that the finder of fact may draw an inference of guilt from the circumstance of flight).

[13] *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).

the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the jury's verdict seems clearly wrong or manifestly unjust, or (2) whether, considering conflicting evidence, the jury's verdict is against the great weight and preponderance of the evidence.[14] An appellate court judge cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, she would have voted to acquit had she been on the jury.[15] Nor can an appellate court declare that a conflict in the evidence justifies a new trial simply because it disagrees with the jury's resolution of that conflict.[16] Nevertheless, though due deference must be given to the fact finder's determinations—particularly those concerning the weight and credibility of the evidence—the reviewing court may disagree with the result in order to prevent a manifest injustice.[17]

In the instant case, there is no conflicting evidence in the record that would lead us to conclude that the jury's verdict is against the great weight and preponderance of the evidence. The only evidence admitted during Elizabeth's case-in-chief was Thomas's and Toni's wills. Moreover, the evidence is not so weak that the jury's verdict seems clearly wrong or manifestly unjust. On appeal, Elizabeth proffers alternative perspectives through which to view much of the evidence against her; these perspectives seek to portray Elizabeth as a naive girl that would be blind to Justin's criminal acts. The jury, however, clearly rejected such a portrayal, and we give due deference to the jury's assessments and

---

[14] *Watson*, 204 S.W.3d at 414-15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

[15] *Watson*, 204 S.W.3d at 417.

[16] *Id.*

[17] *Johnson*, 23 S.W.3d at 9; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

determinations of the evidence. After a neutral review of all the evidence, both for and against the jury's finding of guilt, we find that the proof of Elizabeth's guilt as a party to the offense is not so obviously weak as to undermine confidence in the jury's verdict, nor is the proof of her guilt as a party, although adequate taken alone, greatly outweighed by contrary proof. Elizabeth's factual sufficiency challenge is overruled.

## V. Conclusion

We affirm the trial court's judgment.

_____
LINDA REYNA YAÑEZ,
Justice

Do not publish. TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and filed
this the 26th day of March, 2009.

11